IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| **LORETTA COX,** | * | |
| Plaintiff, | * | |
| v. | | Case No.: GJH-14-3702 |
| | * | |
| **U.S. POSTAL SERVICE FEDERAL CREDIT UNION, ET AL.,** | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

This is a disparate treatment, retaliation, and hostile work environment case brought by Plaintiff Loretta Cox ("Cox") against her former employer, U.S. Postal Service Federal Credit Union ("the Credit Union"), as well as her various supervisors, Will Yarborough ("Yarborough"), Steve Cimino ("Cimino"), and Erica Lanceskes ("Lanceskes") (together with the Credit Union, "the Credit Union Defendants") for purported violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Cox has also sued CUNA Mutual Group, CUMIS Ins. Society, Inc., Jeff Post (collectively, "the CUMIS Defendants"), and the Credit Union Defendants for defamation. This Memorandum Opinion and accompanying Order address the motions to dismiss filed by the CUMIS Defendants (*see* ECF No. 16) and the Credit Union Defendants (*see* ECF No. 13). A hearing is not necessary. *See* Loc. R. 105.6 (Md.). For the reasons stated below, the CUMIS Defendants' motion to dismiss is GRANTED, in full, and the Credit Union Defendants' motion to dismiss is GRANTED, in part, and DENIED, in part.

1

**I.     BACKGROUND**

Cox, an African-American female, began her employment with the Credit Union on April 23, 2007 as a Personal Service Representative. *See* ECF No. 18-9. Up until the time Cox was terminated on April 17, 2013, she claims that she was subjected to a racially offensive atmosphere that was tolerated by several high ranking Credit Union supervisors. *See id.* Specifically, Cox alleges that she received two "racially inappropriate e-mails" from Lanceskes and Credit Union Chief Financial Officer Don Jarboe ("Jarboe"). ECF No. 3-1. She also alleges that she was subjected to several other "offensive situations." *Id.* In addition to the alleged racially hostile work environment, Cox contends that African-American employees of the Credit Union were treated less favorably than white employees. *See id.* Thus, at a meeting on February 6, 2013, Cox expressed this concern to her manager, Brinton Chalmers, and the Credit Union's Vice-President, Cimino. *See id.* Shortly thereafter, the Credit Union accused Cox of financial malfeasance and placed her on administrative leave. *See id.* According to Cox, these allegations were relayed to the CUMIS Defendants causing them to "revoke [her] Fidelity Bond." *Id.* As a result of Cox's alleged financial malfeasance and the resulting loss of her fidelity bond, Cox alleges she was terminated from the Credit Union on April 17, 2013. *See* ECF No. 18-9.

Cox has filed the instant lawsuit against the Credit Union Defendants for violating Title VII. Specifically, Cox alleges in her amended complaint that she was (1) treated differently from similarly situated employees; (2) retaliated against for complaining of this disparate treatment; and (3) subjected to a racially hostile work environment. Additionally, Cox contends that the Credit Union's allegations of her involvement in financial malfeasance were false and defamatory. As such, Cox has sued the Credit Union and the CUMIS Defendants for defamation.

The Credit Union and the CUMIS Defendants have both moved to dismiss Cox's amended complaint. *See* ECF Nos. 13, 16.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if it "fails to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). This rule's purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). To that end, the Court bears in mind the requirements of Fed.R.Civ.P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 663.

In an employment discrimination case such as this, "pleadings need not 'contain specific facts establishing a *prima facie* case of discrimination under the framework set forth' in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Westmoreland v. Prince George's Cnty.*, No. 09-2453, 2010 WL 3369169, at *3 (D. Md. Aug.23, 2010 (quoting *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)). Such a requirement "would essentially create a 'heightened pleading standard' under which a plaintiff without direct evidence of discrimination would need to plead a *prima facie* case even though she might uncover direct evidence during discovery."

*Id.* (quoting *Swierkiewicz*, 534 U.S. at 511-12). If this were the case, a plaintiff claiming employment discrimination would have "'to plead more facts than [s]he may ultimately need to prove to succeed on the merits if direct evidence of discrimination is discovered.'" *Id.* (quoting *Swierkiewicz*, 534 U.S. at 512).

The Fourth Circuit "has not, however, interpreted *Swierkiewicz* as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) ("[T]he Supreme Court's holding in *Swierkiewicz v. Sorema* did not alter the basic pleading requirement that a plaintiff set forth facts sufficient to allege each element of his claim." (internal citation omitted)). Thus, while a plaintiff pleading a discrimination claim does not need to *establish* a *prima facie* case under *McDonnell Douglas* to survive a motion to dismiss, *Swierkiewicz*, 534 U.S. at 510, she must still plead facts sufficient to state each element of the asserted claim. *See Bass*, 324 F.3d at 765 ("While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff is required to allege facts that support a claim for relief.") (emphasis in original).

### III.     DISCUSSION

#### A.     Title VII Claims

Title VII makes it illegal for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a). Additionally, Title VII prohibits discrimination against an employee in retaliation for the employee's opposing the employer's illegal discrimination practices or participating in Title VII enforcement proceedings. *See* 42 U.S.C. §

2000e–3(a). Cox contends that the Credit Union violated these two sections of Title VII by (1) treating her differently than other employees; and (2) by terminating her in retaliation for expressing concern about the alleged disparate treatment. *See* ECF No. 3-1. An employer also contravenes § 2000e–2(a)(1) by, *inter alia*, requiring an African–American employee to work in a racially hostile environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-67 (1986). Here, in addition to her disparate treatment and retaliation claims, Cox also alleges the existence of a racially hostile work environment. *See* ECF No. 3-1.

### 1. Disparate Treatment Claim

First, Cox alleges that the Credit Union Defendants discriminated against her by treating her differently than other employees who also spoke up during the February 2013 meeting, but who were not terminated like her. *See* ECF No. 3-1 at 1. In order to state a *prima facie* claim of discrimination under Title VII, a plaintiff must plausibly allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010). Here, Cox has failed to plead facts to show that she was treated differently from a similarly situated employee outside of her protected class.

At most, Cox alleges that she "was not the only person that spoke up in the [February 2013] meeting" but "was the only person that was" terminated as a result. ECF No. 3-1. This is not enough to satisfy the fourth prong of the *prima facie case* of disparate treatment. Although courts do not always require comparator evidence, a plaintiff, like Cox, who bases her allegations entirely upon a comparison to another employee "must demonstrate that the comparator was 'similarly situated' in all relevant respects." *Sawyers v. United Parcel Serv.*, 946 F.Supp.2d 432, 442 (D. Md. 2013) *aff'd,* 13-1777, 2014 WL 2809027 (4th Cir. June 23, 2014).

"Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Haywood v. Locke*, 387 F. App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)); *see also Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) ("[T]he purpose of the similarly situated requirement is to eliminate confounding variables, such as differing roles, performance histories, or decisionmaking personnel . . . .") *aff'd,* 553 U.S. 442 (2008).

Here, Cox has not even alleged that the other employees who were not terminated for speaking up at the February 2013 meeting were outside of her protected class. All Cox alleges is that she "was not the only person that spoke," but she does not provide any additional information about those other individuals who did speak up, but who were not disciplined. Without this information, Cox has failed to adequately allege that she was treated differently from similarly situated employees outside of her protected class. Accordingly, the Court will dismiss Cox's disparate treatment claim without prejudice.[1]

###    2.    Retaliation

Cox also alleges that the Credit Union Defendants retaliated against her when it terminated her shortly after speaking up about alleged preferential treatment being given to white employees. *See* ECF No. 3-1 at 1. To properly plead retaliation, a plaintiff must allege "(1) that

---

[1] To the extent Cox intended to base her disparate treatment claim on the fact one African-American employee had to approve loans, while two white employees did not, it too would fail. Specifically, Cox does not allege that she, herself, was treated differently; rather, Cox alleges that Mrs. Parham (an African-American) was treated differently than two white employees. *See* ECF No. 1-4 at 3. Cox is therefore attempting to raise a disparate treatment claim on behalf of Mrs. Parham, which she cannot do under Title VII. *See Patterson v. Augat Wiring Sys., Inc.*, 944 F. Supp. 1509, 1514, n.2 (M.D. Ala. 1996) (acknowledging that plaintiff lacks standing to assert Title VII claims on behalf of third parties).

she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity and the adverse employment action." *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 258 (4th Cir.1998). Cox has satisfied this pleading burden.

The first element of a retaliation claim requires a plaintiff to plead that she engaged in protected activity. *Id.* Opposition to an employer's policies by formal or informal complaints qualifies as protected activity. *See id.* at 259. ("Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."). Here, Cox has adequately alleged that she engaged in "protected activity" by speaking up in a meeting on February 6, 2013 about the fact that African-American loan officers were required to approve loans, even though white loan officers were not required to perform such work. *See* ECF No. 3-1.

The second element of a retaliation claim requires a plaintiff to plead that an adverse employment action was taken against her. *See Laughlin,* 149 F.3d at 258. Again, Cox has satisfied this element, as she has alleged that shortly after speaking up at the February 2013 meeting, she was terminated.

As for the third element, a plaintiff must plead facts sufficient to establish "a causal link between the protected activity and the adverse employment action." *Laughlin,* 149 F.3d at 258. "Often, temporal proximity between a protected activity and an adverse employment action has been found sufficient to establish a causal connection." *Jackson v. State of Maryland*, 171 F. Supp. 2d 532, 545 (D. Md. 2001); *see also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998) ("Normally, very little evidence of a causal connection is required to establish a prima facie case. In fact, we have held that merely the closeness in time between a filing of a

discrimination charge and an employer's firing an employee is sufficient to make a prima facie case of causality." (citations omitted)). Viewing the facts in the light most favorable to Cox, the Court finds that the temporal proximity between the February meeting and the April termination are close enough in time and circumstance to establish a causal connection. Of course, discovery may ultimately reveal evidence that causes the Court to view this temporal proximity differently. But for now, Cox has met her minimal pleading burden. The Court will therefore deny the Credit Union Defendants' motion to dismiss Cox's retaliation claim.[2]

### 3. Hostile Work Environment

Next, Cox contends that the Credit Union Defendants violated Title VII by creating a racially hostile work environment. *See* ECF No. 3-1. To state a claim for a racially hostile work environment, a plaintiff "must show that: (1) the harassment was unwelcome; (2) the harassment was based on [her] race []; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

Here, none of the conduct of which Cox complains was based on her race as an African American. For example, Cox alleges that she overheard the Chief Financial Officer of the Credit Union call a collections manager a "faggot." ECF No. 3-1. Additionally, Cox alleges that Cimino stated after a staff meeting that "[t]hey should be happy they have jobs." *Id*. She also complains

---

[2] As for Defendants Yarborough, Cimino, and Lanceskes, the Court will dismiss these individual defendants. The Fourth Circuit has held that "supervisors are not liable in their individual capacities for Title VII violations." *Lissau v. Southern Food Service*, 159 F.3d 177, 180 (4th Cir. 1998). Because Cox seeks to hold Defendants Yarborough, Cimino, and Lanceskes liable in their individual capacities as supervisors, this Court must dismiss them as defendants. *See Luy v. Balt. Police Dept.*, 326 F.Supp.2d 682, 688 (D. Md. 2004) (dismissing Title VII claim against police commissioner), *aff'd,* 120 Fed.Appx. 465 (4th Cir. 2005); *see also Erskine v. Bd. of Educ.*, 197 F.Supp.2d 399, 405 (D. Md. 2002) (dismissing Title VII claims against public school administrators).

that a janitor was disruptive to her work by "pulling trash loudly and vacuuming" while she worked. *Id.* Even when the Court views these allegations in the light most favorable to Cox, none of these actions relate to Cox's race; rather, they are all racially neutral comments that, although they may be offensive and understandably bothersome to Cox, cannot form the basis of a race-based hostile work claim. *See Smith v. Allied Sys., Ltd.*, 2000 WL 708909, at *5 (D. Md. 2000) *aff'd* 232 F.3d 889 (4th Cir. 2000) (rejecting claim of hostile environment discrimination where plaintiff offered "no evidence that the harassment he complains about was based on race"); *Settle v. Baltimore County*, 34 F.Supp.2d 969, 1003 (D. Md. 1999) *aff'd sub nom. Harris v. Earp*, 203 F.3d 820, 2000 WL 51282 (4th Cir. 2000), *Settle v. Baltimore County Police Dep't*, 203 F.3d 822, 2000 WL 51283 (4th Cir. 2000) (refusing to consider allegations when they are "racially neutral, and there is no evidence in the record that the underlying acts and omissions . . . occurred because [plaintiff] is an African–American"); *Watson v. Gutierrez*, 2006 WL 1647116, at *5 (E.D. Va. June 6, 2006) (hostile work environment was not shown when "[e]ach of Plaintiff's allegations involve[d] actions that facially b[ore] no relation to Plaintiff's race").

Cox also attempts to demonstrate harassment based on race by alleging that Lanceskes opened staff meetings by stating, "Welcome to the Redneck Convention." *Id.* The word "redneck" is a derogatory term towards white people, not African-Americans. It therefore cannot be used to establish harassment based on Cox's race.

Finally, Cox complains about two e-mails she received that she contends contributed to a racially hostile work environment. First, Cox alleges that she received an e-mail of "a snowman hanging in a noose." ECF No. 3-1 at 1. This e-mail, which Cox attached to her opposition to the Credit Union Defendants' motion to dismiss, was sent by Jarboe to the entire staff of the Credit

Union in the middle of winter on February 12, 2010.[3] *See* ECF No. 18-6 at 4-5. The subject line of the e-mail reads "Sick of winter" and the body of the e-mail states, "This pretty well says it all." Beneath the text of the e-mail is a picture of a snowman perched on a park bench with a noose around its neck. *See id.* Cox also alleges that she received a second e-mail nearly one and a half years later containing a picture of "an individual being tied and whipped." *Id.* at 1. This e-mail, which was also attached to Cox's opposition to the Credit Union Defendants' motion to dismiss, was sent by Lanceskes to the entire staff on September 8, 2011. The subject line of the e-mail reads "timesheets" with the body of the e-mail containing a cartoon image of a white man being whipped. Underneath the cartoon, Lanceskes writes: "Please turn in your timesheet by 2:00 tomorrow. Thanks!"

      The Court certainly recognizes that images of whippings and hangings of the sort depicted in these e-mails may evoke thoughts of race-based atrocities such as slavery and lynchings; however, these e-mails depict a white figure and a snowman, respectively, as their victims. Thus, while still ill-advised, the racial component of these images is negated. Accordingly, viewing these e-mails in the context in which they were sent, while still construing the facts in the light most favorable to Cox, the Court cannot conclude that these e-mails, which were sent to the entire Credit Union staff, constitute harassment based on Cox's race, as the e-mails were, on their face, race-neutral.

      Moreover, even if these two e-mails did constitute harassment based on Cox's race, the harassment would not be sufficiently severe or pervasive as to alter the conditions of Cox's employment. To be sure, Cox does not even allege that the receipt of these e-mails in any way

---

[3] Because these e-mails are integral to Cox's hostile work environment claim, the Court can consider them without converting Defendants' motions to dismiss into motions for summary judgment. *See White v. Mortgage Dynamics, Inc.*, 528 F.Supp.2d 576, 579 (D. Md. 2007).

impacted her ability to perform her job or otherwise altered the conditions of her employment. Without more, the Court cannot conclude that the receipt of these two e-mails was severe or pervasive.[4] Accordingly, Cox's hostile work environment claim is dismissed without prejudice.

### B.     Defamation

In addition to Cox's Title VII claims, she also raises a defamation claim against the Credit Union Defendants and the CUMIS Defendants. *See* ECF No. 3-1. In Maryland, defamation claims are subject to a one year statute of limitations. *See* Md. Code. Ann. Cts. & Jud. Proc. § 5-105 ("[a]n action for assault, libel, or slander shall be filed within one year from the date it accrues"). A cause of action for defamation generally accrues upon the publication of the defamatory material. *See Shepard v. Nabb*, 84 Md.App. 687, 696 (1990). Here, the publication of the allegedly defamatory material occurred on or before April 12, 2013 when she "was falsely accused of financial malfeasance . . . ." ECF No. 18-4. Although the details of this alleged defamation are sparse, Cox directs the Court's attention to an April 12, 2013 letter sent to Cox by the CUMIS Defendants that she claims contained false information received from the Credit Union at some point prior to April 12, 2013. *See* ECF No. 18-4. Cox's defamation claim therefore accrued no later than April 12, 2013. As such, Cox was required to file her defamation claim no later than April 12, 2014. Because she did not file her claim until November 26, 2014

---

[4] This is true even in light of the Fourth Circuit's recent decision in *Boyer-Liberto v. Fontainebleau Corp.*, No. 13-1473, 2015 WL 2116849, at *9 (4th Cir. May 7, 2015), which held that a single incident of harassment can be so severe that it satisfies the *prima facie* case of a race-based hostile work environment claim. In that case, the challenged conduct involved the use of the word "porch monkey," which the Fourth Circuit noted "is about as odious as the use of the word 'nigger.'" *Id.* at *12. This case involves no such thing.

(*see* ECF No. 1), Cox's defamation claim is barred by the statute of limitations and will be dismissed, with prejudice, against all Defendants.[5]

## IV. CONCLUSION

For the reasons stated above, the Court will grant the CUMIS Defendants' motion to dismiss, in full, and will grant, in part, and deny, in part, the Credit Union Defendants' motion to dismiss. Specifically, as against the Credit Union Defendants, Cox's disparate treatment claim and hostile work environment claim are dismissed without prejudice, her defamation claim is dismissed with prejudice, and her retaliation claim survives.

Dated: June 17, 2015                                         /S/
                                                    George J. Hazel
                                                    United States District Judge

---

[5] The Court notes that the Credit Union Defendants raised their statute of limitations defense in their motion to dismiss. *See* ECF No. 13-1 at 16-17. Cox, however, did not respond to this argument. The Court therefore considers it conceded. *See Ferdinand–Davenport v. Children's Guild,* 742 F.Supp.2d 772, 777 (D.Md.2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."); *see also Mentch v. Eastern Sav. Bank, FSB*, 949 F.Supp. 1236, 1247 (D. Md. 1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of claim).