IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| LORETTA ELIANA COX, | * |
| Plaintiff, | * |
| v. | * Civil Action No. PX 14-3702 |
| U.S. POSTAL SERVICE FEDERAL FEDERAL CREDIT UNION, ET AL., | * |
| Defendants. | * |

**MEMORANDUM OPINION**

Pending before the court are cross motions for summary judgment. ECF Nos. 37 & 39. Plaintiff Loretta Cox ("Cox") filed suit against her former employer, the U.S. Postal Service Federal Credit Union ("the Credit Union"), alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3, in connection with her termination from employment. In a previous ruling, the Court dismissed all but Cox's retaliation claim under Title VII against the Credit Union. ECF No. 22. With regard to the retaliation claim, discovery has closed, and the parties have fully briefed the issues. The court now rules pursuant to Local Rule 105.6 because no hearing is necessary. For the reasons stated below, the Credit Union's motion will be GRANTED and Cox's motion will be DENIED.

I. **Undisputed Material Facts**

The following facts are undisputed and material to the Court's determination. Cox, an African-American woman, was employed by the Credit Union, a financial cooperative that provides loans and other financial services to employees of the United States Postal Service. The Credit Union hired Cox as a "Personal Service Representative I" in 2007. *See* ECF No. 18-9; ECF No. 42-6 at 6–7. By the time of her discharge, she had been promoted to Personal Service

Representative II, and was trained to counsel members of the Credit Union, research accounts, and process new loans. ECF No. 42-6 at 7.

The Credit Union requires employees who are also members of the Credit Union to maintain their accounts in accordance with the Credit Union's policies and procedures. ECF No. 37-3 at 21; ECF No. 42-6 at 14–17. These policies prohibit any fraud or dishonesty on the part of employees, manipulation of loan accounts or records, and "check kiting." ECF No. 37-3 at 30. The mechanics of check kiting are the writing of a check on an account without adequate funds, then depositing the check and withdrawing funds before the check has "cleared." Checks are, in other words, misused as a form of unauthorized credit or "float."

The Credit Union is a member of the National Credit Union Administration, which "requires bond coverage be maintained on all employees of a federal credit union." ECF No. 42-5 at 5; ECF No. 37-3 at 3. CUNA Mutual Group ("CUNA Mutual"), as the issuer of the bond for the Credit Union, requires that the Credit Union notify CUNA Mutual of any dishonest or fraudulent act committed by an employee such as Cox. CUNA Mutual then determines whether it will maintain fidelity bond coverage for the employee in question. Pursuant to the National Credit Union Administration's Rules and Regulations, all Credit Union employees must maintain fidelity bond eligibility as a condition of employment. ECF No. 37-3 at 3; ECF No. 39-7.

The Credit Union routinely audits employee financial accounts at random, and Cox's personal financial account was selected for this review in December of 2012. ECF No. 37-4 at 2. During this audit, the Credit Union uncovered evidence of suspected check kiting. *Id.* at 2, 7–23. The Credit Union then more fully investigated Cox's suspicious transactions during the months of January and February 2013.

During this investigation, Senior Credit Union staff met with Cox twice on February 12 and 13, 2013, and requested that Cox provide the Credit Union with her financial account statements to demonstrate that she had sufficient funds in her accounts and thus had not engaged in check kiting. ECF No. 37-6 at 40–48; ECF No. 37-3 at 52–54. Cox refused to produce her financial statements both times. *Id.*

On February 6, 2013, Cox participated in a sales and service meeting with other Personal Representative I and II employees at the Credit Union. At some point during this meeting, Steve Cimino, the Credit Union's Executive Vice President, stated that he would like the Personal Representatives to generate more loans. Cox responded that the Credit Union could generate more loans if it allowed more Credit Union officers to approve the loans. At that time, of the three available loan officers, only one, an African American woman, was actually approving loans. ECF No. 37-6 at 25–26. Cox testified at her deposition that she told those at the meeting "I know we need more people to approve loans. You have Rita and Sue that are able to approve loans, but you only have Connie approving loans." ECF No. 37-6 at 25. However, Cox admitted that she never mentioned the race of any loan officers at all during this meeting. ECF No. 37-6 at 32. Also, those responsible for investigating Cox's suspected check kiting did not attend the February 6 meeting and were unaware of the comments Cox made during that meeting. ECF No. 37-4 at 4.

A little more than a week later, on February 14, 2013, the Credit Union placed Cox on paid administrative leave and reported Cox's financial activity to CUNA Mutual as required under the terms of its fidelity bond agreement. ECF No. 37-3 at 64. On March 4, 2013, CUNA Mutual terminated Cox's fidelity bond coverage. No. 37-3 at 79–81. Cox appealed CUNA Mutual's decision twice, submitting information that, in her view, demonstrated she was not

check kiting. CUNA Mutual denied Cox's appeals and refused to reinstate her under the fidelity bond. ECF No. 37-3 at 123–69. The Credit Union then terminated Cox on April 17, 2013 pursuant its bond agreement with CUNA Mutual and National Credit Union Administration requirements. *See* ECF No. 37-3 at 171–72.

Cox filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on June 20, 2013, and was issued a right to sue letter on August 29, 2014. She subsequently filed her Complaint in this Court on November 26, 2014. ECF No. 1.

## II.     STANDARD OF REVIEW

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–50 (citations omitted). At the same time, the court must construe the facts presented in the light most favorable to the party opposing the motion. *See Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett*, 532 F.3d at 297.

When faced with cross-motions for summary judgment, the court must consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (citations and internal quotation marks omitted). The court reviews each motion under the familiar standard outlined above. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3d ed. 1998).

### III.   ANALYSIS

#### A.  The Credit Union's Motion for Summary Judgment

The gravamen of Cox's retaliation claim is that the Credit Union terminated her because she "spoke out" at the February 6 meeting about the loan approval process falling disproportionately to only one of three available loan officers. ECF No. 39 at 1. Title VII prohibits an employer from retaliating against an employee who opposes the employer's illegal discrimination practices. *See* 42 U.S.C. § 2000e–3. To sustain her burden on a retaliation claim, Cox must show that: (1) she engaged in protected activity; (2) her employer took an adverse employment action against her; and (3) there was a causal connection between the protected activity and the adverse employment action. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). If Cox makes such a showing, the burden shifts to the Credit Union to offer a non-discriminatory basis for the adverse employment action. *Matvia v. Bald Head Island*, 259 F.3d 261, 271 (4th Cir. 2001). Cox then has the opportunity to prove that the asserted reason is pre-textual. *Id.*; *see also Smith v. First Union Nat. Bank*, 202 F.3d 234, 248

(4th Cir. 2000) ("The *McDonnell Douglas* burden-shifting scheme applies in analyzing retaliation claims under Title VII.").

With respect to protected activity, a plaintiff can sustain her burden by demonstrating that she opposed her employer's discriminatory practices. *See Laughlin v. Metro Was. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998); *Rachel-Smith v. FTDATA, Inc.*, 247 F. Supp. 2d 734, 747 (D. Md. 2003). "Opposition" is broadly defined and includes "informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin*, 149 F.3d at 259. But not all acts in opposition receive protection; there must be evidence that the oppositional act was directed toward an unlawful employment practice prohibited by Title VII. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015); *McNair v. Computer Data Sys., Inc.*, 172 F.3d 863 (4th Cir. 1999) (table opinion) (plaintiff failed to present evidence that her oppositional statement "contained even implicit or indirect opposition to racial or sexual discrimination") (citing *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (holding that protected activity for purposes of identical anti-retaliation provision of ADEA requires specific allegation of unlawful age discrimination)); *see also Lewis v. Home Sales Co.*, No. RDB 09-1153, 2011 WL 826352, at *6 (D. Md. Mar. 7, 2011) (concluding that plaintiff had not established that he engaged in a protected activity because plaintiff never mentioned race or discriminatory animus).

Here, Cox has failed to marshal any evidence that her comments at the February 6 meeting were about any alleged "discriminatory practices" of the Credit Union. 37-6 at 32. By her own admission, Cox simply voiced that allowing more than one of three loan officers to participate in the approval process could increase the number of loans approved. *Id.* Cox also admits that neither she nor anyone else mentioned race during the meeting, or suggested the

Credit Union was distributing the workload based on race. *Id*. Accordingly, viewing the record in the light most favorable to Cox, no genuine issue of triable fact exists regarding whether Cox's comments at the February 6 meeting was "protected activity." They were not. Thus, on this ground alone, this Court grants the Credit Union's Motion for summary judgment.

Alternatively, even if Cox could demonstrate she engaged in protected activity—and it is undisputed that Cox's termination was an adverse action in satisfaction of the second *McDonnell Douglas* element—no genuine issue of triable fact exists as to whether the Credit Union's adverse action was taken *in response to* Cox's "speaking out" at the February 6 meeting. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (to satisfy the third element of a retaliation claim, a plaintiff must demonstrate that "the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity"), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). Rather, because CUNA Mutual revoked Cox's fidelity bond, the Credit Union was required to terminate her per the terms of CUNA Mutual's fidelity bond and National Credit Union Administration regulations. ECF No. 39-7.

Cox argues that a jury can infer from the temporal proximity of the Credit Union's adverse action and the February 6 meeting that one beget the other. ECF No. 39 at 3. Although sometimes temporal proximity between the protected activity and the adverse action can support an inference of retaliation, *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003), where the employer takes steps to pursue legitimate grounds for termination before the alleged protected activity took place, temporal proximity of the two events alone is insufficient to proceed to the jury. *See, e.g.*, *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001) (per curiam) ("[P]roceeding along lines previously contemplated, though not yet definitively determined, is no

evidence whatever of causality."); *Horne v. Reznick Fedder & Silverman*, 154 Fed. Appx. 361, 364 (4th Cir. 2005) (per curiam); *Glynn v. Impact Sci. & Tech., Inc.*, 807 F. Supp. 2d 391, 418 (D. Md. 2011) (determining, in the context of a False Claims Act retaliation claim, that a series of events before the protected activity took place contradicted plaintiff's assertion of causation).

Here, it is undisputed that the Credit Union discovered Cox's financial irregularities and took substantial steps to investigate the same well before the February 6 meeting. ECF No. 37-4 at 2–3, 7–71. Notably, no evidence exists that those conducting the investigation knew anything about Cox's comments at the February 6 meeting. ECF No. 37-4 at 4. Accordingly, the record reflects that Cox was terminated "legitimately and without pretext." *Glynn*, 807 F. Supp. 2d. at 418–419.

### B. Cox's Cross Motion for Summary Judgment

Because Cox is *pro se*, the Court will construe her Cross Motion for Summary Judgment, ECF No. 39, liberally. *See Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Essentially, Cox argues that the evidence, viewed most favorably to the Credit Union, establishes that she was "wrongfully terminated" because she "spoke out" at the February 6 meeting. ECF No. 39 at 3-4. Cox also alleges that her conduct during the meeting can be the only reason for why she was fired because she had an otherwise exemplary employment record. *Id.* But because Cox has failed to establish that her "speaking out" was protected activity or was the reason for her termination, her arguments are unavailing.

Further Cox avers that the Credit Union provided "false information" to CUNA Mutual regarding various suspected transactions. ECF No. 39 at 2. Cox, however, provides no evidence apart from her mere assertion that the information supplied to the Credit Union was "false." *See* Fed. R. Civ. P. 56(e); *Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro*,

8

64 F.3d 962, 967 (4th Cir. 1995); *Hawkins v. Leggett*, 955 F. Supp. 2d 474, 486 (D. Md. 2013) ("[H]earsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment."). Cox's motion to grant summary judgment in her favor, therefore, must be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be GRANTED and Plaintiff's cross motion for summary judgement will be DENIED. A separate order will follow.

/S/
PAULA XINIS
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LORETTA ELIANA COX, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 14-3702 |
| U.S. POSTAL SERVICE FEDERAL FEDERAL CREDIT UNION, ET AL., | * | |
| Defendants. | * | |

******

## ORDER

For the reasons stated in the foregoing Memorandum Opinion, it is this 27th day of June, 2016, by the United States District Court for the District of Maryland, ORDERED that:

1. The Motion for Summary Judgment filed by Defendant U.S. POSTAL SERVICE FEDERAL CREDIT UNION (ECF No. 37) BE, and the same hereby IS, GRANTED;

2. The Motion for Summary Judgment filed by Plaintiff LORETTA ELIANA COX (ECF No. 39) BE, and the same hereby IS, DENIED;

3. Judgment BE, and the same hereby IS, ENTERED in favor of Defendant and against Plaintiff; and

4. The clerk will transmit copies of the Memorandum Opinion and this Order to Plaintiff and counsel for Defendant and CLOSE this case.

/S/
PAULA XINIS
United States District Judge